UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROZARRI VERION YOUNG,<br><br>Defendant. | No. 2:18-CR-00205-MCE<br><br>**ORDER** |

On August 22, 2019, Defendant Rozarri Verion Young ("Defendant") pled guilty to two counts of Interstate Transmission of a Threat to Injure with Intent to Export in violation of 18 U.S.C. § 875(b), and she currently awaits sentencing. Presently before the Court is Defendant's Motion for Compassionate Release (ECF No. 56), by which she asks that the Court "modify [Defendant's] term of imprisonment to time served and to impose a special condition that [Defendant] serve a period of home confinement on supervised release." ECF No. 56 at 1.[1]  The Government opposes Defendant's request. ECF No. 58.  For the reasons that follow, her Motion is DENIED.

///

///

---

[1] Defendant then later asks that the Court "modify [Defendant's] detention order and release her on an ankle bracelet." Id.  Given that Defendant has not been sentenced, the Court construes her request as one for bail pending sentencing.

1

Detention is mandatory "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ." 18 U.S.C. § 3143(a)(1). "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c).

This Court has previously held that Defendant failed to meet her burden of showing by clear and convincing evidence that release was warranted for even one day to address her personal affairs in anticipation of her prolonged incarceration. ECF No. 45. Defendant now asks the Court to revisit this decision based on the COVID-19 pandemic and Defendant's personal circumstances in conjunction with her housing at the Sacramento County Jail. More specifically, Defendant contends she "suffers from hypertension, pre-diabetes, and is obese," which are all known risk factors for COVID-19. Def.'s Mot. at 2. Nothing in Defendant's Emergency Motion, however, persuades the Court that Defendant is any closer to meeting her burden now.[2]

The Court does not reach this conclusion lightly, given the "unprecedented magnitude of the COVID-19 pandemic." United States v. Martin, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020). "While correctional officials . . . may successfully have dealt with past viruses and outbreaks of communicable diseases, they pale in scope with the magnitude and speed of transmission of COVID-19." Id. "This virus comes in the form of a world-wide pandemic, resulting in a declaration of a national emergency by the federal government, and state of emergency by the State of [California]." Id. "With no known effective treatment, and vaccines months (or more) away, public health officials have been left to urge the public to practice 'social distancing,' frequent (and thorough) hand washing, and avoidance of close contact with others (in increasingly more restrictive terms)—all of which are extremely difficult to implement in a detention facility." Id. "For this reason, the Court takes this health risk extremely seriously . . . ." Id. Regardless, though, a determination of whether this Defendant should be released

---

[2] The Court's prior orders are incorporated by reference here.

2

requires an individualized assessment of the relevant factors, which here point to the conclusion that Defendant remains a flight risk, perhaps even more so than before, and a danger to the community.

Defendant has even more incentive to flee now than she did when the Court addressed her last request.  Defendant has been incarcerated in the Sacramento County Main Jail for almost two years and has now experienced for the first time in her adult life the hardships that accompany prolonged incarceration.  She is now facing the very real possibility of a multi-year prison sentence and has a minor child to consider, each of which make the risk of running worth more than any potential consequence.

Moreover, while some courts take the position that escape at this juncture may be more difficult, see In re Manrique, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020), this Court posits that the opposite may be true.  Law enforcement officers, who are also human and are equally susceptible to this virus based on their own personal circumstances, are put at significantly greater risk when having to locate and apprehend a fleeing convict during a world-wide pandemic.  The precautions they are required to take to apprehend fugitives under these circumstances could very likely make it easier for Defendant to escape, to cross a border, or to go into hiding.

Nor is the Court persuaded that Defendant has a viable release plan in the first place.  According to Defendant, she intends to be released to reside with her mother, who lives alone and who will allow Defendant to quarantine in her home.  Def.'s Mot. at 6. Once any period of quarantine is terminated, Defendant's mother plans to "assist her daughter in getting into rehabilitation and educational classes." Id.  Unfortunately, Defendant's own actions speak louder than her mother's words.  Defendant has engaged in a life of crime since she was 14, with no apparent regard for her mother's approval, and nothing in Defendant's motion indicates her mother will have the power to compel her to change her behavior now.  Indeed, nothing in Defendant's Motion explains how her future appearances will be guaranteed should she be released.

Moreover, the Court has no doubt that if essentially left to her own devices, this

Defendant, who indicates she has very likely been exposed to COVID-19, will almost certainly refuse to follow health directives and will further effectuate the spread of the virus throughout the community. Indeed, "[D]efendant committed the instant offense while under a criminal justice sentence for assault with a deadly weapon and unlawful taking or driving of a vehicle in Sacramento County Superior Court." PSR § 57. That serves to highlight her life-long refusal to follow the law or to adhere to the rules imposed directly on her. The health directives currently in place, however, rely primarily on voluntary compliance. Since this Defendant has an established history of defying even mandatory orders, it is entirely unlikely she would follow society's newly established protocols now. The Court thus concludes that releasing Defendant would put the health and safety of the community at risk.

Finally, let the Court be clear—this is not a case, like many addressing this pandemic, where an individual presumed innocent is awaiting trial. This Defendant stands convicted of two counts of Interstate Transmission of a Threat to Injure with Intent to Export in violation of 18 U.S.C. § 875(b). Guilt has been established, thus the burden shifts to her.

Defendant's crimes were also morally reprehensible. They were calculated to take advantage of individuals who were already living a parent's worst nightmare and who were at their most vulnerable and desperate. As the Government explains:

> In summary, on two occasions involving two different parents with missing children, [Defendant] sent text messages purporting to be the kidnapper, demanding money and threatening harm to the missing children if she was not paid. The threats contained in Count One were received in the Eastern District of California while the threats in Count Two were received in the District of Colorado. [Defendant] was in Reno, Nevada when she sent the threatening texts demanding money. Following her arrest and after waiving her Miranda rights, [Defendant] admitted sending the threatening texts messages and that she was trying to extort money from the victims by taking advantage of their tragic situations. [Defendant] faces an advisory guideline range of 70-87 months.

Gov.'s Opp. at 2. These are crimes with ongoing consequences that destroy lives in

4

ways one cannot understand unless he or she walks in the victim's shoes.  Indeed, one of the victims in this case articulated the pain inflicted on the victim and his or her family by Defendant initially and the fear her potential release instills in them even now:

> Today I just learned that the person that who is responsible for the emotional trauma that happened during the time that daughter was missing, will have the ability to be released based on the information I received.  The thought of this happening brings back the anxiety and emotional stress that my family and I felt at the time.  I don't feel like justice has been served if she is allowed to be freed during this time.  Under the circumstances with the Pandemic, it's doesn't mean that she should be allowed to be freed.  I feel like the safety of myself and family will be at jeopardy if she is allowed to be released.  I would highly recommend this not happen for the safety of myself or any other person(s) that can be harmed.  With that I fear that she will take advantage of other people especially with people that are going through the Pandemic.  I also fear that she will flee and not serve her time.

Victim Impact Statement, ECF No. 60-1.

Given the foregoing, the Court specifically finds that Defendant has failed to show strong enough "exceptional circumstances" to warrant release in her case.  First, a generalized fear based on the existence of the pandemic itself is insufficient.  See United States v. Villegas, 2020 WL 1649520, at *2 (C.D. Cal. Apr. 3, 2020) ("[G]eneralized fears and speculative concerns are essentially all that Defendants point to here, which do not add up to 'compelling reasons' justifying their temporary release.").  Second, even considering Defendant's specific medical history, the Court is not convinced that the health risk to Defendant in particular is so much greater due to her incarceration that it can overcome the societal risks incurred should Defendant flee, subjecting law enforcement to their own elevated risks in apprehending her.  Finally, Defendant has done nothing to meet her burden of showing that she is neither a flight risk nor danger to the community.  Defendant's Motion for Compassionate Release (ECF No. 56) is thus DENIED.

IT IS SO ORDERED.

DATE:  June 8, 2020

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE